[674 NYS2d 654]

Sette-Juliano Contracting, Inc./Halcyon Construction Corporation, a Joint Venture, Respondent, v Aetna Casualty and Surety Company et al., Appellants, et al., Defendants.

First Department, June 23, 1998

## APPEARANCES OF COUNSEL

*Frederick R. Rohn* of counsel, New York City (*Sacks Montgomery, P. C.,* attorneys), for respondent.

*Henry James Wallach* of counsel, New York City (*Hart & Hume, L. L. P.,* attorneys), for appellants.

## OPINION OF THE COURT

MAZZARELLI, J.

In 1991, the City of New York awarded a public-improvement construction contract (Contract) to defendant Sette-Juliano Construction Corp./Land-Site Contracting Corp. (S-J Land) for the reconstruction of Hudson Street in Manhattan. The project included water main work, and S-J Land hired plaintiff Sette-Juliano Contracting, Inc./Halcyon Construction Corporation (S-J Halcyon) as a subcontractor to perform this and other work.[1] The project also required S-J Halcyon to perform certain

---

**1.** S-J Halcyon was a joint venture formed in December 1991 between Sette-Juliano Contracting, Inc., an affiliate of S-J Land, and Halcyon Construction Corporation.

"utility interference work."[2] Pursuant to the Contract, defendants-appellants The Aetna Casualty and Surety Company and United States Fidelity and Guaranty Co. (Sureties) issued a performance bond and a payment bond on behalf of S-J Land, and the City as obligee, guaranteeing performance of the work and payment for labor and materials furnished by persons performing work under the contract. The amount of each bond was $23,667,940, the same amount as the contract.

In April 1994, plaintiff filed a "NOTICE UNDER MECHANIC'S LIEN LAW FOR ACCOUNT OF PUBLIC IMPROVEMENT" pursuant to Lien Law § 5, in the amount of $1,346,328. Plaintiff alleged that it was owed this amount for work it had performed and the materials it had furnished to S-J Land in the performance of the contract. By letter dated April 13, 1994, plaintiff also submitted a claim against the payment bond for the same amount. To discharge the mechanic's lien, the Sureties posted an undertaking in the amount of $1,467,497.50 (lien-discharge bond) pursuant to Lien Law § 21 (5). The lien-discharge bond obligated the Sureties to pay "any judgment which may be rendered in an action for the enforcement of said lien, not exceeding the sum of [$1,467,497.50]."

In October 1994, Aetna's counsel informed plaintiff that it considered the amounts claimed in the mechanic's lien and on the payment bond "wildly exaggerated," and that Aetna would not make any payments until the dispute between S-J Land and plaintiff was "judicially determined." Pursuant to the terms of the subcontract, plaintiff commenced an arbitration proceeding in November 1994, seeking an unpaid balance of $1,347,328, plus interest and damages in an undetermined amount. The Sureties were apprised of the pendency of the arbitration proceedings, but were not made parties thereto. At the arbitration hearing, plaintiff contended that it had performed the water main and utility interference work and was owed $3,948,748.84. Plaintiff acknowledged it had been paid $2,778,114.48, leaving an unpaid balance of $1,170,634.36, plus $78,885.46 in lost profits. On June 12, 1996, the arbitrators awarded plaintiff a lump sum of $1,099,994.94, without any explanation as to the basis for such award. Plaintiff commenced a proceeding in the Supreme Court to confirm the award, and judgment was entered against S-J Land, on default, in the amount of $1,099,994.94, plus interest.

---

2. The Contract defines utility interference work as "the work necessary to remove, repair, protect, support, shift, temporarily remove and replace, work around and/or work in the presence of the [utility companies]."

In May 1995, S-J Land advised the Sureties that it could no longer perform its obligations under the main contract. S-J Land assigned the contract to another contractor, Judlau Contracting, with the Sureties' consent. In May 1996, plaintiff commenced the instant action, alleging that S-J Land's default prevented plaintiff from completing performance of the work, and that plaintiff was owed $1,023,901.81 for unpaid amounts for labor and materials. Plaintiff's first cause of action sought to foreclose the mechanic's lien and for judgment against the Sureties under the lien-discharge bond. The second cause of action sought recovery from Aetna under the payment bond.[3]

In November 1994, plaintiff moved for partial summary judgment on its first and second causes of action in the amount of $1,021,109.48, plus interest. The amount requested represented the amount of the arbitration award ($1,099,994.94), minus the amount of "lost profits" sought in the arbitration proceeding ($78,885.46), as plaintiff conceded that there might be a question as to whether this portion of the arbitrator's award was covered by the lien-discharge bond and the payment bond.

The Sureties opposed the motion, arguing that in order to recover under the lien-discharge bond, the plaintiff had to establish the validity of the mechanic's lien and that the items and amounts for which recovery was sought were properly chargeable against the Sureties. The Sureties contended that because the $1,099,994.94 arbitration award was made in lump-sum form, without any explanation as to what work or materials it represented, it was impossible for the court to summarily determine that the validity of the lien had been established, and that the entire amount of the award was chargeable against them under the lien-discharge bond and payment bond. Additionally, the Sureties argued that plaintiff sought recovery at the arbitration for utility interference work that, it asserted, was not covered by the mechanic's lien or the payment bond. Since the possibility existed that the arbitration award included amounts for this utility interference work, the Sureties claimed that summary judgment should not be granted on the basis of that award.

The IAS Court granted plaintiff's motion for partial summary judgment on its first and second causes of action. Initially, the court found that the Sureties had "sufficiently participated" in the arbitration proceeding so as to bind them

---

3. The third cause of action in the complaint is not pertinent to this appeal.

to the determination. However, the court acknowledged that the arbitrator's decision was not conclusive as to the mechanic's lien itself, or whether the amount of the award is chargeable against the Sureties under the payment bond, but was only conclusive as to the value of the labor and materials. The court rejected the Sureties' claim that the award included amounts for work not covered by the lien and the payment bond (i.e., utility interference work) as "conclusory," in the absence of supporting documentation. The court further determined that the utility work was "inseparable" from the water main work covered by the Contract.

Based on these determinations, the IAS Court found that the validity of the mechanic's lien had been established based upon S-J Land's nonperformance, and its failure to oppose the instant motion or the proceeding to confirm the arbitration award. The court noted that the judgment against S-J Land, even upon default, constituted " 'prima facie' " evidence against the Surety. The court also found the Sureties liable under the payment bond which, by its terms, gave plaintiff a direct right of action against the principal or Surety for the cost of labor and materials incurred during the performance of the Contract.

■ On appeal, the Sureties argue that the Supreme Court erred in granting plaintiff's motion for partial summary judgment based on the arbitration award. The Sureties contend that plaintiff made a $1,014,097.79 claim for utility interference work in arbitration; that such work is not covered by the payment bond, and may not be the subject of a public improvement lien, because the City is not liable for the cost of such work under the Contract; that such work was actually performed pursuant to a separate agreement between the utility companies and S-J Land; and that therefore the arbitration award likely included amounts not properly chargeable against the Sureties. We agree.

At the outset, we reject plaintiff's assertion that the arbitration award did not include any sums due for the utility work, but rather consisted only of costs that were bonded by the Sureties. Plaintiff theorizes that since S-J Land has received full payment for the utility work from the utility companies, it is logical to assume that S-J Land has already remitted those payments to plaintiff in full, and, therefore, the only sums still owed to plaintiff at the arbitration were those bonded by the Sureties. This argument is purely speculative, since it is not supported by any documentation and it is premised on plaintiff's self-serving claim that it initially allocated all pay-

ments received from S-J Land to the amount owed for the utility work, leaving an outstanding balance for only the work indisputably covered by the bonds (*see, Shahmoon Indus. v Peerless Ins. Co.*, 16 AD2d 716, 718 [even where creditor rightfully allocates payment to nonbonded debt after debtor makes no allocation, summary judgment against surety inappropriate where manner of allocation was solely within knowledge of plaintiff creditor]). The argument also flies in the face of plaintiff's request for payment for utility work at the arbitration hearing.

■ The IAS Court properly determined that while an arbitrator's decision as to the value of labor and materials is conclusive as to all parties to the arbitration in any action to foreclose the lien (Lien Law § 35; *Mancini v Stern*, 28 Misc 2d 77, 78; *May v New Amsterdam Cas. Co.*, 270 App Div 472, 474), it is not conclusive as to the validity of the mechanic's lien itself, or as to whether the amounts awarded are chargeable against the sureties under the lien-discharge bond (*Matter of Brescia Constr. Co. v Walart Constr. Co.*, 264 NY 260, 264-265). As the Court of Appeals stated in *Brescia* (*supra,* at 265): "At most the award constitutes an adjudication of the amount due to the [lienor]. Even though conclusive on that point, there can be no judgment against the surety without an adjudication that this amount is chargeable against the property by virtue of the notice of lien" (*see also, J. Castronovo, Inc. v Hillside Dev. Corp.*, 160 AD2d 763, 765).

The Sureties' minor participation in the arbitration proceeding did not result in a forfeiture of their right to contest the validity of the lien (*see, Matter of Brescia Constr. Co. v Walart Constr. Co., supra,* at 265-266). The issues of the validity of the lien and whether the amounts plaintiff sought were chargeable against the lien-discharge bond were not before the arbitrators. Thus, even if the Sureties appeared in some fashion at the arbitration proceeding, that fact, by itself, may not be construed as consent to enlarge the scope of those proceedings to include the lien foreclosure issues, or that a judgment may be entered against the Sureties without a judgment that the amount due was chargeable against the property (*Matter of Brescia Constr. Co. v Walart Constr. Co., supra,* at 266; *see also,* 63 NY Jur 2d, Guaranty and Suretyship, § 397, at 527).

■ Notwithstanding the above, the IAS Court erroneously found that the validity of the mechanic's lien was established by S-J Land's failure to perform its obligations under the contract, and by its default on plaintiff's motions to confirm the

arbitration award and for partial summary judgment. "Generally, a judgment entered against a principal upon default is only prima facie evidence against the surety. The latter remains at liberty to contest its own liability by establishing affirmatively that the principal was not liable (*Brescia Constr. Co. v Walart Constr. Co.*, 245 App Div 105, 108; 57 NY Jur, Suretyship and Guaranty, § 240, p 601)." (*Firedoor Corp. v Merlin Indus.*, 86 AD2d 577.)

Thus, the Sureties in the present case were entitled to an opportunity to contest their principal's liability. Contrary to the IAS Court's view, the Sureties offered persuasive evidence that the arbitration award (subsequently reduced to judgment) included amounts not properly chargeable against them. Although the court characterized the Sureties' claim that the arbitration award included amounts payable for utility work as "conclusory," it was far from that. As noted previously, plaintiff specifically requested over $1 million in payment for utility work, a request that is totally inconsistent with its appellate claim that it was already paid in full for the utility work.

 Moreover, there is authority for the Sureties' argument that the utility work performed by plaintiff was not chargeable against the payment bond, and is not subject to the public improvement mechanic's lien, since it was not work required by the public-improvement contract between the City and S-J Land. Lien Law § 5 provides that any person providing labor or materials pursuant to a public-improvement contract has a lien for the value or agreed price of said labor and materials "upon the moneys of the state * * * applicable to * * * such improvement, to the extent of the amount due or to become due." Thus, the lien extends only to monies due, or to become due, from the State to the contractor (or subcontractor) under the public-improvement contract (*see, Hempstead Concrete Corp. v Elite Assocs.*, 203 AD2d 521, 523).

Under Attachment 5 of the contract, the responsibility for the utility work, and the cost thereof, belonged solely to the utility companies. Attachment 5 further provides that the utility company had the option of performing the work itself, hiring an outside contractor or asking the on-site contractor, S-J Land in the present case, to perform the work. Here, the utility company exercised the latter option, hiring S-J Land to do the work, and it paid S-J Land in full. Attachment 5 made clear that the City was not chargeable with the cost of utility work. Accordingly, the Sureties argue that the utility work was not performed pursuant to the public-improvement contract, that

the City could not be charged for such work and that, therefore, there are no "monies" to which a public improvement lien could attach. We are in full agreement with this analysis, which comports with our reading of Lien Law § 5 (see, *Hempstead Concrete Corp. v Elite Assocs., supra*).

This Court came to a similar conclusion in *Varlotta Constr. Corp. v Sette-Juliano Constr. Corp.* (234 AD2d 183), where we dismissed a subcontractor's claim for utility interference work brought against a surety under a payment bond. In *Varlotta* (*supra*), we stated that a surety's obligations are limited to those it undertakes in its bond, and that the bond attaches to the principal contract and must be construed in conjunction therewith. Consequently, we held that the utility work performed by the subcontractor in that case did not constitute work under the contract, and therefore was not covered by the surety's bond, since the utility companies were solely responsible for performing such work and the contractor could only do so if hired by the utility company. We also held that the IAS Court improperly concluded that the payment bond covered the contract and the "separate contracts" for utility work (*supra*). As precisely the same scenario prevails in the present case, we conclude that the utility work was not covered by the payment bond and was not lienable under Lien Law § 5.

In our view, the IAS Court's conclusion that the water main work under the contract and the utility work were "inseparable" fails to recognize the distinctions we drew in the *Varlotta* case. Plaintiff's attempts to distinguish *Varlotta* are unavailing since the critical factor present in both cases was that the utility work was not performed pursuant to the main contract between the owner and contractor, but rather by separate agreements with the utility companies. Our decision in *Matter of Diamond Asphalt Corp. v Sander* (238 AD2d 197, *lv granted* 91 NY2d 806), cited by plaintiff, is inapposite, since although we stated that utility work constituted "public work" within the meaning of General Municipal Law § 103 (1), that decision involved bidding procedures for City contracts, and had nothing to do with what work is chargeable against a surety's lien-discharge bond or payment bond.

Additionally, plaintiff itself recognized that the arbitrator's award was overinclusive, by conceding that the $78,885 in lost profits, ostensibly included in the award, was not properly chargeable against the Sureties. Thus, even if it could not be stated as a matter of law that the utility work was not covered by the bonds, at a minimum, there are issues of fact as to

whether such work was covered. These issues preclude summary judgment on plaintiff's first and second causes of action, and we reverse and remit for further proceedings.

Accordingly, the order and judgment, Supreme Court, New York County (Jane Solomon, J.), entered on or about August 21, 1997 and September 5, 1997, respectively, granting plaintiff's motion for partial summary judgment on its first and second causes of action and awarding it $1,134,790.67, should be reversed, on the law, without costs, the judgment vacated, plaintiff's motion denied, and the matter remanded for further proceedings.

ROSENBERGER, J. P., NARDELLI, WALLACH and RUBIN, JJ., concur.

Order and Judgment, Supreme Court, New York County, entered on or about August 21, 1997 and September 5, 1997, respectively, reversed, on the law, without costs, the judgment vacated, plaintiff's motion for partial summary judgment on its first and second causes of action denied, and the matter remanded for further proceedings.